**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for IRWIN UNION BANK, F.S.B., a federal savings bank,,<br><br>       Plaintiff,<br><br>vs.<br><br>PHOENIX CASA DEL SOL, L.L.C., and Arizona limited liability corporation; JOHN AND JANE DOES I-X,<br><br>       Defendants. | No. CV 09-2556-PHX-MHM<br><br>**ORDER** |

Currently before this Court is Resolute Commercial Services, LLC's Motion to Terminate Receivership, Release and Exonerate the Bond, Disburse Funds, and Approve Final Accounting. (Doc. 56). Having reviewed the Parties' briefs, the Court issues the following Order.

### I. BACKGROUND

The pertinent factual background is not disputed by either of the Parties. On March 17, 2009, at the request of Irwin Union Bank, F.S.B. ("the Bank"), a state court issued an order appointing Resolute Commercial Services, LLC ("the Receiver") as receiver of a 72-unit apartment complex located at 6805 North 27th Avenue, Phoenix, Arizona ("the

Property"). On Match 19, 2009 the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver of the Bank under the provisions of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989,12 U.S.C. §§ 1811, et seq. ("FIRREA"). On December 17, 2009, the Property was sold to a third-party by Trustee's Sale for $920,000.00.

On May 24, 2010, the Receiver filed the instant motion, requesting termination of its receivership, exoneration of its bond, approval of its final accounting, and an Order directing the FDIC to reimburse the Receiver its fees and costs. (Doc. 56). The FDIC responded on June 10, 2010. (Doc. 60). In their response, the FDIC expressed its opposition to the Receiver's Motion, but only to the extent the Receiver requested (1) payment in cash to any person or entity (the FDIC wishes to pay Receiver with receiver's certificates), and (2) payment for any uncorroborated expense or liability. (Id. at 7). The Receiver replied on June 21, 2010. After directing the Parties to confer about the disputed remaining issues, on December 1, 2010, the Court held a hearing concerning the Receiver's motion. (Doc. 68).

At that hearing, the Parties informed the Court that all disputed issues had been resolved, with one exception: the form and date for the FDIC's repayment of the Receiver's expenses. The Parties divide the expenses incurred by the Receiver into two distinct periods: (1) expenses incurred by the Receiver prior to the FDIC taking over Irwin Union Bank ("pre-FDIC expenses"); and (2) expenses incurred by the Receiver after the FDIC took over Irwin Union Bank ("post-FDIC expenses"). As to the pre-FDIC expenses, at the time of oral argument, the FDIC had not decided whether it would pay in cash or in receiver's certificates. As for the post-FDIC expenses, the FDIC stated that it agreed to pay in cash but did not know when it would be bale to make that payment. In light of how close the Parties were to reaching an agreement, the Court ordered the FDIC's attorney to consult with his client to try and get definitive answers regarding the form and date of payment. The Court also set another hearing for two weeks later.

On December 15, 2010, the Court held another hearing and learned that the FDIC had no further answers concerning the outstanding issues. (Doc. 69). Accordingly, the Court Ordered the FDIC to make its decision on the remaining issues no later than January 3, 2011,

- 2 -

1    and directed the Receiver to submit a proposed order if the FDIC failed to meet the Court's
2    deadline. (Id.). The FDIC provided no answers, and on January 4, 2011, the Receiver lodged
3    its proposed Order Terminating Receivership, Releasing and Exonerating the Bond,
4    Disbursing Funds and Approving Final Accounting. (Doc. 71). The FDIC responded in
5    opposition on January 12, 2010, (Doc. 72), and on the Receiver replied on January 18, 2010.

6    **II.    DISCUSSION**

7          The Receiver requests that this Court order the FDIC to pay its pre-FDIC expenses
8    in cash, and set a date certain as to payment for both the pre- and post-FDIC expenses. The
9    FDIC responds that this Court does not have the authority to dictate either the form or timing
10   of any payment to the Receiver. All other issues between the Parties have been resolved.

11          Having heard the Parties' arguments regarding the issue of payment on two
12   occasions, the Court finds that the fair outcome would be to order that the FDIC pay the
13   receiver in cash immediately. In short, the Court agrees with the question posed by the
14   Receiver in its motion: "who would ever agree to be a state court receiver in this economy
15   if it would have to wait for the FDIC to liquidate the bank before getting paid on the
16   receiver's certificates to preserve the FDIC's collateral?" (Doc. 56). That being said, what
17   is fair is not always what is legal. In the Ninth Circuit,"[t]here is no question that the FDIC
18   may pay creditors with receiver's certificates instead of with cash." Battista v. FDIC, 195
19   F.3d 1113, 1116 (1999). The "FDIC may use receiver's certificates as its manner of payment
20   because requiring cash payments would subvert the comprehensive scheme of FIRREA,
21   including 1821(i)(2)'s limitation on an unsecured general creditor's claim to only a pro rata
22   share of the proceeds from the liquidation of the financial institution's assets." Id. The
23   reason: "To require the FDIC to pay certain creditors in cash would allow those creditors to
24   'jump the line, recovering more than their pro rata share of the liquidated assets, if the
25   financial institution's debts exceed its assets." Id. Accordingly, the Court finds that its
26   hands are tied with respect to requiring the FDIC to pay the Receiver's pre-FDIC fees in
27   cash. See F & N Enters. v. FDIC, 2010 U.S. Dist. LEXIS 54336, *5 (D. Ariz. June 2, 2010)
28   (stating in a case where the Court found that the FDIC could pay the plaintiff in receiver's

1 certificates instead of cash: "Although the Court recognizes the resulting harshness that is
2 likely to follow from such a ruling, this Court is not at liberty to deviate from the dictates of
3 Congress and the Ninth Circuit.").

4 While the Court cannot dictate to the FDIC concerning the form of payment, it will
5 make a determination concerning what priority of repayment the FDIC's obligations to the
6 Receiver are owed. See Dunlap v. FDIC, 2010 U.S. Dist. LEXIS 60489, *7-14 (E.D. Cal.
7 June 17, 2010) (determining if the debt owed to plaintiff by FDIC constituted an
8 administrative expense). FIRREA subsection 1821(d)(11) establishes a distribution priority
9 for claims to the financial institution's assets:

> Subject to section 1815(e)(2)(C) of this title, amounts realized from the liquidation or other resolution of any insured depository institution by any receiver appointed for such institution shall be distributed to pay claims (other than secured claims to the extent of any such security) in the following order of priority:
>
> (i) Administrative expenses of the receiver.
>
> (ii) Any deposit liability of the institution.
>
> (iii) Any other general or senior liability of the institution (which is not a liability described in clause (iv) or (v)).
>
> (iv) Any obligation subordinated to depositors or general creditors (which is not an obligation described in clause (v)).
>
> (v) Any obligation to shareholders or members arising as a result of their status as shareholders or members (including any depository institution holding company or any shareholder or creditor of such company).

20 FIRREA defines "administrative expenses" as "those necessary expenses incurred by the
21 receiver in liquidating…a failed insured depository institution. Such expenses shall include
22 pre-failure and post-failure obligations that the receiver determines are necessary and
23 appropriate to facilitate the smooth and orderly liquidation or other resolution of the
24 institution." 12 C.F.R. § 360.4.  In this case, all of the expenses incurred by the Receiver
25 were in the service of preserving Irwin Bank's (and now the FDIC's) asset—the Phoenix
26 Casa Del Sol Apartment Complex—so that it could be liquidated (which it was).
27 Accordingly, it is clear to the Court that the FDIC's obligation to the Receiver—both for pre-
28 and post-FDIC expenses—are administrative expenses which deserve to receive the highest

- 4 -

1  priority of repayment when Irwin Bank's assets are eventually liquidated by the FDIC.
2  Accordingly, the Court will order that any receiver's certificates the FDIC issues to the
3  Receiver as payment must be given the priority of administrative expenses under subsection
4  1821(d)(11). While this may not fully mitigate the harshness of not receiving a cash
5  payment, it should better ensure that the Receiver is eventually paid in full. As for the date
6  of payment, the Court is unaware of any authority which allows it to set a date certain for
7  payment, but it will mandate that payment be made forthwith.

8  **Accordingly,**

9  **IT IS HEREBY ORDERED** granting the Receiver's Motion to Terminate
10 Receivership, Release and Exonerate the Bond, Disburse Funds, and Approve Final
11 Accounting, subject to the conditions regarding form and date of payment set forth in this
12 Order. (Doc. 56).

13 **IT IS FURTHER ORDERED**

14 1. The receivership established in the above-captioned matter is hereby terminated as of
15    the date of the entry of this Order with respect to the real property known as the Casa
16    Del Sol Apartments located at 6805 North 27th Avenue, Phoenix, Arizona 85017 and
17    all of the personal property located there (collectively, the "Property"), which is
18    legally described in Exhibit A to the Order appointing the Receivership;

19 2. the Receiver has filed a final accounting that specifically itemize any expenses
20    incurred by the Receiver during the receivership but unpaid as of April 26, 2010,
21    including its fees and costs and its attorney's fees and costs ("Accrued Expenses"),
22    and Plaintiff has not lodged any written objection to such final accounting. Therefore,
23    the Receiver's final accounting is approved, and all fees and expenses incurred by the
24    Receiver totaling $61,243.26 ($56,881.53 incurred as of April 26, 2010 + $4,361.73
25    incurred in attorneys' fees and costs since April 26, 2010), whether they are deemed
26    Post-FDIC Receivership Expenses or Pre-FDIC Receivership Expenses, shall be paid
27    by FDIC to the Receiver; the Post-FDIC expenses to be paid in cash, as agreed to by
28    the FDIC, and the Pre-FDIC Expense to be paid in a manner—either cash or

receiver's certificate—to be determined by the FDIC. Any receiver's certificates issued to the Receiver shall be given repayment priority of "[a]dministrative expenses of the receiver" pursuant to FIRREA subsection 1821(d)(11). Finally, the FDIC shall make payment to the Receiver forthwith;

3. that on or about fifteen days from the entry of this Order, all records and/or other permanent documents relating to the Property in the possession of the Receiver shall be delivered to Defendant Phoenix Casa Del Sol in care of Defendant's counsel or as otherwise directed by Defendant;

4. the Receiver's Bond filed herein in the amount of $15,000.00 shall be released and exonerated in favor of the Receiver;

5. upon completion of the various requirements of this Order, any Party or the Receiver, in the event he, she, or it believes it is necessary to clarify the record in this case, may lodge a separate order approving the Receiver's final accounting and/or exonerating bond, which Order may be signed by the Court without further hearing or proceeding.

**IT IS FURTHER ORDERED** directing the Clerk of Court to close this action.

DATED this 1st day of March, 2011.

_____
Mary H. Murguia
United States District Judge